BAKER BOTTS L.L.P.

**BAKER BOTTS L.L.P.**
G. Hopkins Guy, III (SBN 124811)
hop.guy@bakerbotts.com
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: 650.739.7500
Facsimile: 650.739.7699

Ali Dhanani (*pro hac vice* to be filed)
ali.dhanani@bakerbotts.com
One Shell Plaza
San Francisco, CA 94111
Telephone: 281.250.2294
Facsimile: 713.229.2808

Jamie R. Lynn (*pro hac vice* to be filed)
jamie.lynn@bakerbotts.com
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: 202.639.7700
Facsimile: 202.639.7890

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C. AND SLING TV L.L.C. | Case No. _____ |
| Plaintiffs, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| JADOO TV, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") allege against Defendant Jadoo TV, Inc. ("Jadoo") as follows:

**PARTIES**

1.  Plaintiff DISH Technologies L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112. It provides innovation and technology services and products to, among others, the DISH Network® satellite pay TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay TV service operated by Sling TV L.L.C.

2.  Plaintiff Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV service, the first online application available in the United States that allowed consumers to stream live television channels to broadband-connected devices at home and on the go.

3.  On information and belief, Defendant Jadoo TV, Inc. is a corporation existing under the laws of the State of California, with its principal place of business at 5880 West Las Positas Boulevard Suite 37, Pleasanton, California 94588.  It operates as a distributor of internet-based South Asian media content.

**JURISDICTION AND VENUE**

4.  DISH asserts a claim for patent infringement against Jadoo arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.  This Court has personal jurisdiction over Jadoo for the following reasons: (1) Jadoo has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (2) Jadoo regularly does business or solicits business in this District; (3) Jadoo engages in other

BAKER BOTTS L.L.P.

persistent courses of conduct and derives substantial revenue by its offering of infringing products and services and providing infringing products and services in this District; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled into court here by its offering of infringing products and services and providing infringing products and services in this District.

6.   Venue is proper in the Northern District of California under at least 28 U.S.C. §§ 1391(a)–(d) and/or 1400(b).   Jadoo is incorporated in California. Additionally, the acts and transactions constituting the violations alleged herein, occurred in part in this judicial district and Jadoo transacts business in this judicial district.  Jadoo's principle place of business is 5880 W. Las Positas Blvd., Suite 37, Pleasanton, California, 94588.

## THE ABS PATENTS

7.   On October 19, 2010, the United States Patent and Trademark Office ("PTO") duly and lawfully issued United States Patent No. 7,818,444 ("the '444 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '444 Patent is attached as Exhibit A. All rights, title, and interest in and to the '444 Patent have been assigned to DISH Technologies L.L.C. (formerly EchoStar Technologies L.L.C.), which is the sole owner of the '444 Patent.

8.   On March 19, 2013, the PTO duly and lawfully issued United States Patent No. 8,402,156 ("the '156 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '156 Patent is attached as Exhibit B.  All rights, title, and interest in and to the '156 Patent have been assigned to DISH Technologies L.L.C. (formerly EchoStar Technologies L.L.C.), which is the sole owner of the '156 Patent.

9.   On June 30, 2015, the PTO duly and lawfully issued United States Patent No. 9,071,668 ("the '668 Patent"), entitled "Apparatus, system, and method for

1
2
3
4

multi-bitrate content streaming." A true and correct copy of the '668 Patent is attached as Exhibit C. All rights, title, and interest in and to the '668 Patent have been assigned to DISH Technologies L.L.C. (formerly EchoStar Technologies L.L.C.), which is the sole owner of the '668 Patent.

5
6
7
8
9
10

10.   On August 2, 2016, the PTO duly and lawfully issued United States Patent No. 9,407,564 ("the '564 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content." A true and correct copy of the '564 Patent is attached as Exhibit D. All rights, title, and interest in and to the '564 Patent have been assigned to DISH Technologies L.L.C. (formerly EchoStar Technologies L.L.C.), which is the sole owner of the '564 Patent.

11
12
13

11.   DISH Technologies L.L.C. has entered into an exclusive license with Sling TV L.L.C. and assigned all substantial rights in the above identified patents to Sling TV L.L.C. including the right to sue thereon.

14
15
16
17
18
19
20

12.   The claimed inventions in these patents are directed to various novel aspects and improvements to adaptive bitrate streaming ("ABS") technology. The '444, '156, '668, and '564 Patents (collectively, "the ABS Patents") are currently in full force and effect. The patent application underlying the '564 Patent is a continuation of U.S. Patent Application No. 11/116,783. Each of the '444, '156, and '668 Patents issued from patent applications that are continuations-in-part of U.S. Patent Application No. 11/116,783.

21
22

## BACKGROUND OF THE DISPUTE
### MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

23
24
25
26
27
28

13.   MOVE Networks, Inc. ("MOVE") was the original owner of the ABS Patents. Originally, Drew Major founded a company called XLon (renamed MOVE in 2006) which, in 2003, invented HTTP-based Adaptive Bit Rate to improve the quality of streamed video content over the Internet. While at MOVE, inventors David Brueck, Mark Hurst, and Drew Major (collectively, "the ABS Inventors") observed that the internet was fast becoming a preferred method for

BAKER BOTTS L.L.P.

distributing live and recorded video to individuals even though content delivery over the internet at the time was notoriously unreliable, expensive and inferior in quality compared to cable and satellite delivered content. To access video content online, users were left with two mediocre choices: (1) waiting for their content to download (which didn't support viewing of live content and often required the user to select the quality desired: LOW, MEDIUM or HIGH, which in turn determined how long the user had to wait before viewing); or (2) streaming live or recorded content, which often was unreliable (pausing to "buffer") or only worked at low-resolution.

14.   The ABS Inventors knew that media streaming had not reached its full potential and that, through research and improvement, streaming had the potential to rival the quality of cable and satellite delivered content. The current state-of-the-art was unacceptable. Often during playback, the streaming technologies did a poor job selecting the video quality / resolution that the network bandwidth and reliability could support. Most commercial systems, from companies like RealNetworks, Adobe, Microsoft or Apple, were proprietary implementations based on public standards (RTP/RTSP); common standards notwithstanding, the proprietary implementations were mutually incompatible. They were expensive to deploy by the Content Delivery Networks and required many servers to scale to a large number of viewers. These technologies also often didn't work going through Internet firewalls without custom IT configurations of server and routing systems. The ABS Inventors recognized this deficiency as an opportunity and developed a better solution.

15.   The ABS Patents' specifications explained the need for improved data transport in content streaming. Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously." *See, e.g.*, '668 Patent, Exhibit C, at col. 1, ll. 48–50. Unfortunately for protocols at the time, "[s]treaming offers the advantage

BAKER BOTTS L.L.P.

of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content." *See, e.g.*, *id.* col. 1, lines 51–53. The ABS Inventors observed that "a need exists for an [invention] that alleviates the problems of reliability, efficiency, and latency" encountered in currently available content streaming systems. *See, e.g.*, *id.* col. 2, ll. 39–41.

16. To address these needs, the ABS Inventors came up with a novel solution: HTTP-based Adaptive Bitrate Streaming. ABS segments the full content file into smaller units ("Streamlets") in multiple bitrates and delivers them over HTTP / TCP, the underlying protocols used for reliably transmitting data over the internet. The MOVE ABS approach enables content delivery to adapt to the bandwidth available at any particular time, ensuring delivery of the highest possible quality content throughout the course of the stream. The playback client device continuously observes the quality of a user's network connection and adjusts the requested quality of the streamed content. The other RTP/RTSP-based technologies used a client / server architecture, where the server determined the bitrate to send to the client. The other technologies also didn't segment the content, usually delivering it as a continuous stream of bits or as a single large file. Segmenting the content allows the playback device to easily change bit rates. The result is that today, MOVE's patented ABS technology allows internet users to stream content from across the world in real time at the highest possible quality.

17. The ABS Patents' specifications describe how the MOVE inventors significantly improved the user viewing experience of streamed content data over a network: "[A] need exists for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network]. Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams." *See, e.g.*, *id.* col. 2, ll. 37–43.

18.   One unconventional but fundamental improvement described in the ABS patents is the creation from the original large content file into sets of streamlets; a plurality of streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different bitrates.  The contiguous playback in order of the streamlets independently yields playback of the full content.  The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set, and as needed to adjust for changing bandwidth resources, a different quality of streamlet from the subsequent set. When the bandwidth of the user's network is constrained, the client can select a lower bit rate to maintain playback continuity instead of "buffering."  This eliminates the need for users to download the full content file before beginning playback.  Segmenting the media into streamlets enables end users to retrieve and enjoy content at the most appropriate bitrate possible as the media is streamed.  It also is well suited for live stream playback.

19.   Another non-routine and revolutionary improvement described in the ABS patents is that the client controls the switching between streamlets having different bitrates.  The benefits of using an intelligent client to make the decisions and switch between different bitrate streamlets are two-fold.  First, the client is in a better position to determine the appropriate streamlet by measuring the actual throughput of the network at its point of reception.   Second, moving the decision-making to the client effectively eliminates the need for a customized video server and instead a standard web server can be employed to host all the content's streamlets.  Streamlets are requested by a client using the standard HTTP/TCP protocol – the web standards upon which the Internet is built.  Custom IT configurations are unnecessary as the file requests operate on the same "port 80" as all web server requests.  Access to the segmented content can be scaled exponentially through the use of standardized web caches.  All combined, these

benefits represent a vast reduction in operating and publishing costs versus the RTP/RTSP-based systems.

20.   The ABS Inventors' improvements to streaming succeeded where others tried and failed.   During the late 1990s, established streaming companies, including RealNetworks, Adobe, Microsoft and Apple, separately attempted to develop a successful multiple bitrate streaming platform by using proprietary implementations of the RTP/RTSP standards.   None of these systems was successful at making bitrate switching consistently and actually work over the Internet.

### ABS PATENTS SELL FOR $45 MILLION

21.   The increasing value of ABS technology and its expanding applicability in online content streaming online is reflected in the number of business transactions in which MOVE and its foundational ABS technologies have been involved.   In December of 2010, EchoStar Advanced Technologies L.L.C., then a wholly owned subsidiary of EchoStar Corporation, spent $45 million to acquire MOVE and its ABS patent portfolio.   Recognizing the ingenuity of MOVE's ABS technology and the value-added for its customers and their increasing interest in quality online content delivery, DISH affiliate DISH Digital Holding L.L.C. acquired EchoStar Advanced Technologies L.L.C. in connection with a joint venture with EchoStar Corporation in 2012.

22.   EchoStar Advanced Technologies L.L.C., which was later renamed DISH Digital L.L.C., transferred the ABS patents to EchoStar Technologies L.L.C. (a subsidiary of EchoStar Corporation) in 2014.   In February 2017, EchoStar Technologies L.L.C. became a subsidiary of DISH Network L.L.C. and, in February 2018, was renamed DISH Technologies L.L.C.

### DISH'S USE OF THE ABS PATENTS

23.   DISH and its affiliated companies are a leading provider of satellite TV and internet streaming services, employing approximately 16,000 people and

BAKER BOTTS L.L.P.

serving nearly 13 million subscribers in the United States.  It is a leading investor and innovator in infrastructure and technologies that will meet the personalized needs of its increasingly diverse pool of customers.  Since its founding, DISH and its affiliated companies have invested millions in research and development and acquisition of novel technologies that will resolve long-felt problems and needs across its industry.

24.   As the public continues to increasingly rely on the internet for its informational and entertainment needs, one such problem into which DISH and its affiliated companies have dedicated great time and resources is improving the quality of streaming media.  The specific entities that implement and own the technology covered by MOVE's patent portfolio have undergone significant evolution as these entities improve upon ABS and advance reliable delivery of high-resolution content over the internet.

25.   DISH's recent investments in ABS have already proven a success.  ABS technology is one of the primary contributors to Sling TV's popularity.  Sling TV L.L.C. is DISH and its affiliated companies' main internet content provider, offering programming to numerous streaming-capable devices.  Since the launch of Sling TV in the beginning of 2015, Sling TV has grown to over two million subscribers, who are now receiving a video playback experience comparable to cable or satellite.

## JADOO'S PRODUCTS AND SERVICES INFRINGE THE ABS PATENTS

26.   Jadoo has been and is now directly infringing and/or indirectly infringing the ABS Patents.

27.   On information and belief, Jadoo is a distributor of internet-based South Asian media content.  Exhibit E.  Jadoo makes, uses, sells, and offers for sale in the United States products and services that infringe the ABS Patents, and continues to do so.  These infringing products and services include, without

limitation, JadooTV service and related applications as implemented on the Jadoo4, Jadoo5, and Jadoo5S set-top boxes (the "Accused Products and Services").

28. On information and belief, JadooTV service and related applications employ the "latest technology" and an "array" of features and accessories to stream live and on-demand content, including television, movies, and music from India, Pakistan, Bangladesh, Afghanistan, Nepal, and the Middle East. *Id.* For an introductory price of $229 for the Jadoo5s or $129 for the Jadoo4, users have access to JadooTV service and related applications, which provides over 1,000 live streaming television channels, over 3,000 Bollywood and regional movies, and over 1,000,000 hours of web-based video-on-demand content. Exhibit F. This content primarily originating from South Asian countries is streamed from across the globe to Jadoo customers in this District using DISH's ABS technology. Below is an example of JadooTV service and related applications using the Jadoo set-top box platform.

BAKER BOTTS L.L.P.

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,818,444

## DIRECT INFRINGEMENT

29.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–28.   of the Complaint as if fully set forth herein.

30.   On information and belief, Jadoo directly infringes, literally and/or under the doctrine of equivalents, at least claim 24 of the '444 Patent, which recites:

A method for multi-bitrate video and/or audio content streaming, the method comprising:

capturing a single video;

segmenting the single video and generating a plurality of sequential raw streamlets that collectively store data to playback the entire video and that individually store data to playback only a portion that starts at a unique time index and whose duration is less than the entire duration of the corresponding video;

encoding each raw streamlet to generate, for each of said raw streamlets, a set including an encoded streamlet for each bitrate supported by the multi-bitrate content streaming, wherein each of the encoded streamlets in each of the sets is stored as a separate content file, wherein the encoded streamlets within each of the sets have the same time index as their corresponding raw streamlet such that the encoded streamlets of the same set independently yield on playback the same portion of the single video, wherein the separate content files within each of the sets are independently requestable by end user stations, and wherein shifts between the different bit rates are made at the time indexes during streaming of the single video;

receiving requests from the end user stations over the Internet for different ones of the separate content files from different ones of the sets; and

transmitting the requested ones of the separate content files to the requesting one of the end user stations, wherein each of the end user stations initiate each of the shifts between the different bit rates during streaming of the single video through a request for the separate

content file storing a different bit rate one of the encoded streamlets for a subsequent one of the time indexes.

JadooTV service and related applications receive segments of selected video program for playback of programming over a network connection. JadooTV service and related applications adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit G to this Complaint is a claim chart with a more detailed infringement analysis of JadooTV service and related applications.[1]

31. On information and belief, Jadoo possesses knowledge of, and is aware of, the '444 Patent, or became aware of this patent at the time of filing this lawsuit.

32. On information and belief, Jadoo intends to, and continues to intend to, directly infringe one or more claims of the '444 Patent through the sale of the Accused Products and Services.

33. On information and belief, Jadoo knew or should have known of the '444 Patent and its infringement of the '444 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '444 Patent.

34. On information and belief, despite knowing that its actions constituted infringement of the '444 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Products and Services.

---

[1] DISH notes that Exhibit G and Exhibits H–J *infra* are based exclusively on publicly available information, and without the benefit of any Court claim construction. Accordingly, for each Count below, DISH reserves the right to supplement, amend or modify the analysis as warranted in light of additional facts, claim construction, or other developments. DISH further reserves the right to add additional claims as the case progresses.

BAKER BOTTS L.L.P.

35.   Jadoo's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

36.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this Court.

<strong>INDIRECT INFRINGEMENT BY INDUCEMENT</strong>

37.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–36.   of the Complaint as if fully set forth herein.

38.   Jadoo is liable for inducing infringement of the '444 Patent under 35 U.S.C. § 271(b) by having knowledge of the '444 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '444 Patent, with specific intent, by its customers.

39.   Specifically, Jadoo actively induces infringement of the '444 Patent by, *inter alia*, training its customers on the use of the Accused Products and Services and/or promotion and/or sales of the Accused Products and Services including JadooTV service and related applications to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '444 Patent.

40.   Jadoo's customers for the Accused Products and Services directly infringe the '444 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

41.   For example, Jadoo actively induces infringement of the '444 Patent, because Jadoo has knowledge that end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms, use Jadoo's infringing JadooTV service and related applications in the United States, and because Jadoo

BAKER BOTTS L.L.P.

encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of JadooTV service and related applications to Jadoo customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '444 Patent.

42.   On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '444 Patent through inducement of the sale and use of the Accused Products and Services.

43.   On information and belief, Jadoo knew or should have known of the '444 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '444 Patent.

44.   On information and belief, despite knowing that its actions constituted inducement infringement of the '444 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Products and Services.

45.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '444 Patent.

46.   Jadoo's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

47.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

BAKER BOTTS L.L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INDIRECT INFRINGEMENT BY
## CONTRIBUTORY INFRINGEMENT

48.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–47.   of the Complaint as if fully set forth herein.

49.   Jadoo is liable for contributory infringement of the '444 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale JadooTV service and related applications within the United States because the Accused Products and Services constitute a material part of the invention embodied in the '444 Patent, which Jadoo knows to be especially made and/or especially adapted for use in infringement of the '444 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.   Jadoo is liable for contributory infringement by having knowledge of the '444 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '444 Patent by its customers who use the Accused Products and Services including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms.

51.   Specifically, Jadoo contributes to infringement of the '444 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused Products and Services to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '444 Patent.  Those customers directly infringe the '444 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

52.   For example, Jadoo is liable for contributory infringement by having knowledge of the '444 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, end users of JadooTV service

and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms to directly infringe the '444 Patent by using JadooTV service and related applications in the United States.

53.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '444 Patent.

54.   Jadoo's past and ongoing infringement of the '444 Patent has and will continue to irreparably harm DISH.

55.   Jadoo's past and ongoing infringement of the '444 Patent has and will continue to cause DISH damages.

56.   Jadoo's past and ongoing infringement of the '444 Patent, upon information and belief, has been knowing and willful.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,402,156

### DIRECT INFRINGEMENT

57.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–56.  of the Complaint as if fully set forth herein.

58.   On information and belief, Jadoo directly infringes, literally and/or under the doctrine of equivalents, at least claim 15 of the '156 Patent, which recites:

A method for adaptive-rate content streaming videos for playback on a content player on an end user station, the method comprising:

receiving a selected one of the videos for generating streamlets for adaptive-rate content streaming; and

creating a plurality of different copies of the same selected video, wherein each of the different copies is encoded at a different bit rate and is divided into a plurality of streamlets that collectively store data to playback the entire video but that individually store data to playback only a portion that starts at a unique time index and whose

BAKER BOTTS L.L.P.

duration is less than the entire duration of the selected video, wherein the time indexes of the streamlets are the same for the different copies such that streamlets with the same time indexes form the different copies independently yield the same portions of the selected video, and wherein each of the streamlets of each of the pluralities is a separate content file that is independently playable by the end user station to thereby allow the end user station to initiate shifts in playback quality during streaming of the selected video through requests for separate content files storing different playback qualities of the encoded streamlets for subsequent ones of the time indexes.

JadooTV service and related applications receive segments of selected video program for playback of programming over a network connection.  JadooTV service and related applications adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit H to this Complaint is a claim chart with a more detailed infringement analysis of JadooTV service and related applications.

59.   Jadoo possesses knowledge of, and is aware of, the '156 Patent, or became aware of this patent at the time of filing this lawsuit.

60.   On information and belief, Jadoo intends to, and continues to intend to, directly infringe one or more claims of the '156 Patent through the sale of the Accused Products and Services.

61.   On information and belief, Jadoo knew or should have known of the '156 Patent and its infringement of the '156 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '156 Patent.

62.   On information and belief, despite knowing that its actions constituted infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Products and Services.

63.  Jadoo's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

64.  Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.    Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

65.  DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–64.   of the Complaint as if fully set forth herein.

66.  Jadoo is liable for inducing infringement of the '156 Patent under 35 U.S.C. § 271(b) by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent, with specific intent, by its customers.

67.  Specifically, Jadoo actively induces infringement of the '156 Patent by, *inter alia*, training its customers on the use of the Accused Products and Services and/or promotion, and/or sales of the Accused Products and Services including JadooTV service and related applications to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '156 Patent.

68.  Jadoo's customers for the Accused Products and Services directly infringe the '156 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

69.  For example, Jadoo actively induces infringement of the '156 Patent, because Jadoo has knowledge that end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms, use Jadoo's infringing JadooTV service and related applications in the United States, and because Jadoo

BAKER BOTTS L.L.P.

encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of JadooTV service and related applications to Jadoo customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '156 Patent.  On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '156 Patent through inducement of the sale and use of the Accused Products and Services.

70.   On information and belief, Jadoo knew or should have known of the '156 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '156 Patent.

71.   On information and belief, despite knowing that its actions constituted inducement infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Products and Services.

72.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '156 Patent.

73.   Jadoo's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

74.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

**INDIRECT INFRINGEMENT BY
CONTRIBUTORY INFRINGEMENT**

75.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–74.   of the Complaint as if fully set forth herein.

76.   Jadoo is liable for contributory infringement of the '156 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale JadooTV service and related applications within the United States JadooTV service and related applications into the United States because the Accused Products and Services constitute a material part of the invention embodied in the '156 Patent, which Jadoo knows to be especially made and/or especially adapted for use in infringement of the '156 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

77.   Jadoo is liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent by its customers who use the Accused Products and Services including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms.

78.   Specifically, Jadoo contributes to infringement of the '156 Patent by, *inter alia*, promotion and/or sales of the infringing Accused Products and Services to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '156 Patent.  Those customers directly infringe the '156 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

79.   For example, Jadoo is liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, end users of JadooTV service

BAKER BOTTS L.L.P.

and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms to directly infringe the '156 Patent by using JadooTV service and related applications in the United States.

80.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '156 Patent.

81.   Jadoo's past and ongoing infringement of the '156 Patent has and will continue to irreparably harm DISH.

82.   Jadoo's past and ongoing infringement of the '156 Patent has and will continue to cause DISH damages.

83.   Jadoo's past and ongoing infringement of the '156 Patent, upon information and belief, has been knowing and willful.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,071,668
## DIRECT INFRINGEMENT

84.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–83.   of the Complaint as if fully set forth herein.

85.   On information and belief, Jadoo directly infringes, literally and/or under the doctrine of equivalents, at least claim 16 of the '668 Patent, which recites:

> A method executable by a content player on an end user device to obtain a stream of a selected video program for playback by the content player, the method comprising:

> requesting the stream of the selected video program via a network connection to a video server, wherein the video server accesses a plurality of different copies of the same selected video each encoded at a different bit rate and each divided into a plurality of segments that collectively store data to playback the entire video but that individually store data to playback only a portion that starts at a unique time index and whose duration is less than the entire playback

BAKER BOTTS L.L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER BOTTS L.L.P.

duration of the selected video, wherein the time indexes of the segments are the same for the different copies such that the segments with the same time indexes from the different copies independently yield the same portions of the selected video, and wherein each of the segments of each of the pluralities is a separate content file that is independently playable by the end user device, wherein the requesting comprises the content player placing, for a set of sequential ones of the time indexes, segment requests over the network connection to the video server to thereby retrieve the separate segments from at least one of the different copies storing the portions of the single video according to the set of time indexes;

receiving the separate segments from the video server at the content player via the network connection; and

adapting subsequent segment requests placed by the content player to the video server based upon successive determinations by the content player to shift the playback quality to a higher or lower quality one of the different copies of the same selected video, wherein the shifts in playback quality occur at the time indexes.

JadooTV service and related applications receive segments of selected video program for playback of programming over a network connection. JadooTV service and related applications adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit I to this Complaint is a claim chart with a more detailed infringement analysis of JadooTV service and related applications.

86. Jadoo possesses knowledge of, and is aware of, the '668 Patent, or became aware of this patent at the time of filing this lawsuit.

87. On information and belief, Jadoo intends to, and continues to intend to, directly infringe one or more claims of the '668 Patent through the sale of the Accused Products and Services.

88. On information and belief, Jadoo knew or should have known of the '668 Patent and its infringement of the '668 Patent, or at least learned of it by way of

the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '668 Patent.

89.   On information and belief, despite knowing that its actions constituted infringement of the '668 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Products and Services.

90.   Jadoo's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

91.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

92.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–91.  of the Complaint as if fully set forth herein.

93.   Jadoo is liable for inducing infringement of the '668 Patent under 35 U.S.C. § 271(b) by having knowledge of the '668 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '668 Patent, with specific intent, by its customers.

94.   Specifically, Jadoo actively induces infringement of the '668 Patent by, *inter alia*, training its customers on the use of the Accused Products and Services and/or promotion and/or sales of the Accused Products and Services including JadooTV service and related applications to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '668 Patent.

BAKER BOTTS L.L.P.

COMPLAINT FOR PATENT INFRINGEMENT   22

95.   Jadoo's customers for the Accused Products and Services directly infringe the '668 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

96.   For example, Jadoo actively induces infringement of the '668 Patent, because Jadoo has knowledge that end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms, use Jadoo's infringing JadooTV service and related applications in the United States, and because Jadoo encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of JadooTV service and related applications to Jadoo customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '668 Patent.  On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '668 Patent through inducement of the sale and use of the Accused Products and Services.

97.   On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '668 Patent through inducement of the sale and use of the Accused Products and Services.

98.   On information and belief, Jadoo knew or should have known of the '668 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '668 Patent.

99.   On information and belief, despite knowing that its actions constituted inducement infringement of the '668 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Products and Services.

COMPLAINT FOR PATENT INFRINGEMENT   23

1
2
3
4

100. On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '668 Patent.

5
6

101. Jadoo's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

7
8
9
10

102. Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market. Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

11

**INDIRECT INFRINGEMENT BY
CONTRIBUTORY INFRINGEMENT**

12
13

103. DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–102. of the Complaint as if fully set forth herein.

14
15
16
17
18
19
20
21

104. Jadoo is liable for contributory infringement of the '668 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale JadooTV service and related applications within the United States JadooTV service and related applications into the United States because the Accused Products and Services constitute a material part of the invention embodied in the '668 Patent, which Jadoo knows to be especially made and/or especially adapted for use in infringement of the '668 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

22
23
24
25
26
27

105. Jadoo is liable for contributory infringement by having knowledge of the '668 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '668 Patent by its customers who use the Accused Products and Services including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms.

28

BAKER BOTTS L.L.P.

BAKER BOTTS L.L.P.

106.   Specifically, Jadoo contributes to infringement of the '668 Patent by, *inter alia*, promotion and/or sales of the infringing Accused Products and Services to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '668 Patent.  Those customers directly infringe the '668 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

107.   For example, Jadoo is liable for contributory infringement by having knowledge of the '668 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms to directly infringe the '668 Patent by using JadooTV service and related applications in the United States.

108.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '668 Patent.

109.   Jadoo's past and ongoing infringement of the '668 Patent has and will continue to irreparably harm DISH.

110.   Jadoo's past and ongoing infringement of the '668 Patent has and will continue to cause DISH damages.

111.   Jadoo's past and ongoing infringement of the '668 Patent, upon information and belief, has been knowing and willful.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,407,564

## DIRECT INFRINGEMENT

112.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–111.   of the Complaint as if fully set forth herein.

113.   On information and belief, Jadoo directly infringes, literally and/or under the doctrine of equivalents, at least claim 8 of the '564 Patent, which recites:

> A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;
>
> streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:
>
> requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;
>
> automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and
>
> making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive

Baker Botts L.L.P.

determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and

presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

JadooTV service and related applications receive segments of selected video program for playback of programming over a network connection. JadooTV service and related applications adapt their requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit J to this Complaint is a claim chart with a more detailed infringement analysis of JadooTV service and related applications.

114. Jadoo possesses knowledge of, and is aware of, the '564 Patent, or became aware of this patent at the time of filing this lawsuit.

115. On information and belief, Jadoo intends to, and continues to intend to, directly infringe one or more claims of the '564 Patent through the sale of the Accused Products and Services.

116. On information and belief, Jadoo knew or should have known of the '564 Patent and its infringement of the '564 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '564 Patent.

117. On information and belief, despite knowing that its actions constituted infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell the Accused Products and Services.

118. Jadoo's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

119.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

**INDIRECT INFRINGEMENT BY INDUCEMENT**

120.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–119.   of the Complaint as if fully set forth herein.

121.   Jadoo is liable for inducing infringement of the '564 Patent under 35 U.S.C. § 271(b) by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent, with specific intent, by its customers.

122.   Specifically, Jadoo actively induces infringement of the '564 Patent by, *inter alia*, training its customers on the use of the Accused Products and Services and/or promotion, and/or sales of the Accused Products and Services including JadooTV service and related applications to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for implementing adaptive-rate content streaming as claimed in the '564 Patent.

123.   Jadoo's customers for the Accused Products and Services directly infringe the '564 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

124.   For example, Jadoo actively induces infringement of the '564 Patent, because Jadoo has knowledge that end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital television streaming services, and digital connected device platforms, use Jadoo's infringing JadooTV and related applications in the United States, and because Jadoo encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of JadooTV service and related applications to Jadoo

BAKER BOTTS L.L.P.

customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '564 Patent. On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '564 Patent through inducement of the sale and use of the Accused Products and Services.

125.   On information and belief, Jadoo intends to, and continues to intend to, indirectly infringe the '564 Patent through inducement of the sale and use of the Accused Products and Services.

126.   On information and belief, Jadoo knew or should have known of the '564 Patent and has acted, and continues to act, in an egregious and wanton manner by infringing the '564 Patent.

127.   On information and belief, despite knowing that its actions constituted inducement infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Jadoo nevertheless continued its infringing actions, and continues to make, use, and sell, the Accused Products and Services.

128.   On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '564 Patent.

129.   Jadoo's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

130.   Jadoo's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Jadoo will continue these infringing acts unless enjoined by this court.

BAKER BOTTS L.L.P.

**INDIRECT INFRINGEMENT BY
CONTRIBUTORY INFRINGEMENT**

131.   DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1–130.   of the Complaint as if fully set forth herein.

132.   Jadoo is liable for contributory infringement of the '564 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale JadooTV service and related applications within the United States JadooTV service and related applications into the United States because the Accused Products and Services constitute a material part of the invention embodied in the '564 Patent, which Jadoo knows to be especially made and/or especially adapted for use in infringement of the '564 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

133.   Jadoo is liable for contributory infringement by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent by its customers including, but not limited to, resellers and end users of the Accused Products and Services.

134.   Specifically, Jadoo contributes to infringement of the '564 Patent by, *inter alia*, promotion and/or sales of the infringing Accused Products and Services to Jadoo's customers including, but not limited to, end-users, subscribers, digital television streaming services, and digital connected device platforms for their use of adaptive-rate content streaming as claimed in the '564 Patent.  Those customers directly infringe the '564 Patent by making, using, selling, and/or offering for sale JadooTV service and related applications.

135.   For example, Jadoo is liable for contributory infringement by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, end users of JadooTV service and related applications including, but not limited to, users, subscribers, digital

BAKER BOTTS L.L.P.

television streaming services, and digital connected device platforms to directly infringe the '564 Patent by using JadooTV service and related applications in the United States.

136.  On information and belief, as a provider of streamed content, Jadoo would have monitored developments of adaptive streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '564 Patent.

137.  Jadoo's past and ongoing infringement of the '564 Patent has and will continue to irreparably harm DISH.

138.  Jadoo's past and ongoing infringement of the '564 Patent has and will continue to cause DISH damages.

139.  Jadoo's past and ongoing infringement of the '564 Patent, upon information and belief, has been knowing and willful.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH respectfully requests that this Court enter:

A.  A judgement in favor of DISH that Jadoo has infringed the ABS Patents, directly, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the ABS Patents;

B.  An order of this Court permanently enjoining Jadoo and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the ABS Patents;

C.  A judgment and order requiring Jadoo to pay DISH its damages, costs, expenses, and pre-judgment and post-judgment interest for Jadoo's infringement of the ABS Patents, as provided under 35 U.S.C. § 284;

D.  A judgment and order requiring Jadoo to pay treble damages as provided under 35 U.S.C. § 284;

E.  A judgment and order finding this case exceptional under 35 U.S.C. § 285 and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action; and

F.  Such other and further relief to which DISH may show itself to be entitled and/or as the Court may deem just and proper.


Dated: August 24, 2018                    Respectfully submitted,

                                          BAKER BOTTS L.L.P.


                                          By: */s/ G. Hopkins Guy*_____
                                          G. Hopkins Guy

                                          *Attorney for Plaintiffs*